**ETHAN ALLEN, INC. v. Jeannette BRESSETT-ROBERGE**

[811 A.2d 171]

No. 01-254

August 20, 2002. This is a dispute over workers' compensation responsibility for the injury to claimant, Jeannette Bressett-Roberge. Claimant, claimant's previous employer Personnel Connection, and its insurance carrier, Liberty Mutual Insurance Co. (hereinafter Liberty), appeal from a decision of the superior court after trial that they and not appellees, Ethan Allen, Inc., and its insurance carrier, Travelers Insurance Co. (hereinafter Travelers), are responsible. They argue that the court erred in not using the last injurious exposure rule to determine which of successive employers must provide workers' compensation benefits to claimant as a result of her carpal tunnel syndrome. We affirm.

Throughout the relevant period from December 2, 1996 through March 10, 1997, claimant worked as a white sander in the Ethan Allen Furniture factory in Orleans, Vermont. As a white sander, she prepared furniture for staining by sanding off marks by hand and filling holes with wood putty. Up until February 24, 1997, she worked for Personnel Connection; on that day she was hired as an employee of Ethan Allen, Inc. and worked for it until she injured her back and left on March 10. From the beginning of her work, claimant suffered pain, swelling and numbness in her hands and arms as a result of the repetitive motion of the sanding activity. The doctors eventually diagnosed claimant's condition as carpal tunnel syndrome and prescribed corrective surgery. The superior court made the following findings concerning the injury:

> Here, the credible, persuasive evidence establishes that [claimant's] . . . bilateral carpal tunnel syndrome was in existence, and sufficiently manifest that corrective surgery would have been required if she had made a formal complaint at that time, by the end of January 1997. By then she was fully engaged with and exhibiting all the classic symptoms: swelling, numbness, tingling, night-time pain, and most importantly shooting pain up and down her arms. Admittedly it is a progressive disease, but in her case that progression had clearly manifested itself as of the end of January 1997. Conversely, even after her formal complaint and physical exam on 2/14/97, her pain and complaints did not radically change or escalate, and she was able to keep performing the same job, and the same duties, until her separate

back injury on 3/7/97 ended her career at Ethan Allen. There is no specific, objective evidence that her condition materially worsened during the period from 2/14/97 to 3/7/97, or that her continuing job duties in fact exacerbated her injury as manifested in late January.

Applying the traditional aggravation versus recurrence analysis, the superior court found that any symptoms that were evident after claimant went to work directly for Ethan Allen, Inc. were a recurrence of the preexisting condition and therefore Liberty, as the carrier for Personnel Connection, was responsible for claimant's workers' compensation benefits. In doing so, the court reversed a decision of the Commissioner of Labor and Industry that Travelers was responsible because claimant's last injurious exposure occurred while claimant worked for Ethan Allen directly.

Liberty characterizes this case as a choice between the last injurious exposure rule and the aggravation versus recurrence rule to allocate workers' compensation costs between successive employers, with the choice determining the outcome. The facts as found by the trial court, however, do not support this characterization of the legal question.

Here, the court found that claimant's work during the short period she was employed directly by Ethan Allen, Inc. did not contribute to her disability to any degree. That finding is supported by some of the medical evidence and is not clearly erroneous. Accordingly, it makes no difference what successive employer rule we adopt. See 9 Larson's Workers' Compensation Law ¶ 153.02[4], at 153-8 (2000) (for last injurious exposure rule the second incident must contribute "even slightly to the causation of the disabling condition"); *Pacher v. Fairdale Farms*, 166 Vt. 626, 627, 699 A.2d 43, 46 (1997) (mem.) (first employer remains

liable if second accident "did not causally contribute to the claimant's disability"). Liberty is responsible for claimant's carpal tunnel syndrome.

We do add one observation. The commissioner used the last injurious exposure rule apparently because he felt that we had, by a footnote in the memorandum decision in *Pacher v. Fairdale Farms*, directed its use "where separate injuries all causally contribute to the total disability so that it becomes difficult or impossible to allocate liability among several potentially liable employers." 166 Vt. at 628 n.2, 699 A.2d at 46 n.2. We do not read the footnote as a direction to use the last injurious exposure rule *in any case*. Instead, we were explaining that use of the rule would have been inappropriate on the facts of *Pacher* even if we adopted the rule for other cases.

Our concern is heightened because Liberty argues that we should adopt the commissioner's endorsement of the last injurious exposure rule based on our deferential standard of review of the commissioner's interpretation and application of the workers' compensation law. See *Wood v. Fletcher Allen Health Care*, 169 Vt. 419, 422, 739 A.2d 1201, 1204 (1999) (this Court defers to commissioner's construction of the workers' compensation act absent a compelling indication of error; commissioner's decision is presumed valid and can be overturned only if there is a clear showing to the contrary). To adopt Liberty's position would be to base this decision on perfectly circular reasoning. As Liberty persuasively demonstrates, the commissioner has not applied a consistent rule in successive employer cases and has not adopted a definitive standard. We cannot defer to a commissioner's interpretation of the law if it varies from case to case. Once the commissioner has adopted a consistent and definitive position, we can review it under our deferential standard.

*Affirmed.*